UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANE DOE, individually and as Mother and Next Friend of J.D., a Minor, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-11940-IT |
| THE LEAGUE SCHOOL OF GREATER BOSTON, INC., FRANK GAGLIARDI, PATRICK FULLER, SEAN BERTONI, and DONNA GRIFFIN, | * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

August 21, 2017

TALWANI, D.J.

Plaintiff Jane Doe's disabled child, J.D., was placed at Defendant The League School of Greater Boston, Inc. (the "School") for special education services. Doe alleges that a seventeen year-old residential student at the School showed J.D. pornographic material and sexually molested J.D., and that the School did not take proper action to protect J.D after learning of that conduct. Count I of the Complaint asserts that the School thereby violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). The School, arguing that it is not a recipient of federal funds, has moved to dismiss this Count for failure to state a claim upon which relief can be granted. Mot. Dismiss Count I of Pls.' Compl. ["Mot. Dismiss"] [#24]. For the reasons set forth below, the motion is DENIED.

I.     Facts as Alleged in the Complaint

The School is a private day and residential school that provides special education services for students with autism spectrum disorder. Compl. ¶¶ 2, 10 [#1]. At the time of the events

giving rise to this case, J.D. was an eleven-year-old disabled student with autism spectrum disorder, mood disorder, and post-traumatic stress disorder. Id. ¶ 8. In January 2014, J.D.'s public school district placed him at the School to receive special education services in compliance with his Individualized Education Plan. Id. ¶¶ 8-9. In September 2014, J.D.'s placement changed from day student to residential student. Id. ¶ 11. J.D. lived in a school-operated home staffed by School employees twenty-four hours per day. Id. ¶¶ 12-13.

In December 2014, School staff learned that A.B., a seventeen-year-old residential student living in the same residence as J.D., showed J.D. pornographic photographs and/or videos on A.B.'s portable PlayStation device. Id. ¶ 14. On December 19, 2014, Doe expressed concerns to the School that J.D. was living with older students and was being shown sexually explicit material. Id. ¶ 16. The School did not report A.B.'s conduct to the Massachusetts Department of Children and Families, did not remove A.B. from J.D.'s residential home, and did not take any other action to separate A.B. and J.D. Id. ¶ 17.

In June 2015, J.D. reported to School staff that A.B. had exposed himself to J.D., had pulled down J.D.'s pants on multiple occasions, and had touched J.D.'s genitals. Id. ¶ 18. These events also occurred at the School-operated residence. Id. A.B., who admitted he had committed these acts, was removed from the residence but continued to attend the School. Id. ¶¶ 19-20. The School did not report these events to the Massachusetts Department of Children and Families. Id. ¶ 21.

From the summer of 2015 to late September 2015, J.D. exhibited symptoms of severe emotional distress. Id. ¶¶ 22-24. On September 24, 2015, Doe met with School staff to discuss the extent of the molestation, and following that meeting, removed J.D. from the School. Id. ¶¶ 24-27. In October 2015, the Massachusetts Department of Children and Families reported to

2

Doe that it had received reports of abuse. Id. ¶ 28.

The Complaint alleges that J.D. has suffered physical injuries and severe emotional distress and was deprived of educational opportunities as a result of the School's failure to adequately protect J.D. Id. ¶¶ 37-46.

 II. Standard

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss a complaint for failure to state a claim upon which relief can be granted, is properly allowed when the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). The court considers the facts as alleged in the complaint. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 5 (1st Cir. 2011). For the purposes of this motion, any well-pleaded, non-conclusory factual allegations are assumed true and all reasonable inferences are drawn in the plaintiff's favor. See Iqbal, 556 U.S. at 680-81 (stating that conclusory allegations are not entitled to a presumption of truth); Twombly, 550 U.S. at 581. Finally, the court will "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)).

 III. Discussion

Title IX prohibits discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance." Education Amendments Act of 1972, 20 U.S.C. §1681(a) (2012). A student who is the victim of sexual harassment by another student may have a claim against his or her school under Title IX. Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999). In order to state such a claim, Doe must allege: (1) that J.D. was "subject to

3

severe, pervasive, and objectively offensive sexual harassment by a school peer"; (2) that the harassment caused J.D. "to be deprived of educational opportunities or benefits"; (3) that the School receives federal funds; (4) that the School knew of the harassment; (5) that the harassment occurred in one of the School's programs or activities; and (6) that the School "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007) (internal quotation marks omitted). The School argues that it does not receive federal funds, and therefore that Doe cannot state a claim under Title IX.

"Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX . . . ." NCAA v. Smith, 525 U.S. 459, 468 (1999) [hereinafter Smith I]; Grove City Coll. v. Bell, 465 U.S. 555, 564 (1984). In Grove City College, the Court emphasized that the fact that the institution received funds indirectly did not matter. 465 U.S. at 570-72. Indeed, the Court noted that even Grove City College recognized "the problematic nature" of the distinction between direct and indirect funds that it was advancing:

> Although its interpretation . . . logically would exclude from coverage under Title IX local school districts that receive federal funds through state educational agencies, see, e.g., 20 U.S.C. §§ 3801 et seq., Grove City wisely does not attempt to defend this result. In fact, the College concedes that "[b]ecause federal assistance is often passed through state agencies, this type of indirect assistance leads to Title IX jurisdiction over the education program or activity which ultimately receives the assistance." [citation omitted] Grove City has proposed no principled basis for treating differently federal assistance received through students and federal aid that is disbursed by a state agency.

Id. at 564, n.12. The Court concluded that "[n]othing in [20 U.S.C. §1681(a)] suggests that . . . the application of the nondiscrimination principle [is] dependent on the manner in which a program or activity receives federal assistance . . . [or that] only institutions that . . . receive checks directly from the federal government are subject to regulation." Id. at 564. All recipients of federal funds, whether initial, intermediary, or ultimate, fall within the regulatory power of

4

Title IX. See id. at 567-68, 568 n.19; Smith v. NCAA, 266 F.3d 152, 160-61 (3d Cir. 2001) [hereinafter Smith II] (applying on remand the Supreme Court's standard as set out in Smith I).

At the same time, "entities that only benefit economically from federal assistance are not" recipients of federal aid. Smith I, 525 U.S. at 468; see also Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 607 (1986) (analyzing similar language in Section 504 of the Rehabilitation Act and finding that private airlines merely benefitted from federal grants to airports and were therefore not recipients of federal funds under the meaning of the Act).

To distinguish between entities that are recipients from those that only benefit economically, courts look to the underlying grant statute to determine (1) whether Congress intended the institution to receive federal funds, and (2) whether the institution has the power to opt out of receiving the funds. Paralyzed Veterans, 477 U.S. at 604, 606-07; see Grove City Coll., 465 U.S. at 563-64, 566-68, 575.

Doe does not specifically state the source of the federal funds the School allegedly received, but does allege that J.D.'s public school district "placed" J.D. as a student at the School because the public school district could not meet his educational needs. Compl. ¶ 9 [#1]. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-50, provides funds to public school districts for special education and related services and sets forth a public school's legal obligation to make such a "placement." The IDEA provides in relevant part:

> [P]rovision is made for the participation of [children placed in private schools by their parents] in the program assisted or carried out under this subchapter by providing for such children special education and related services . . .
>
> Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, at no cost to their parents, if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency as the means of carrying out the provision of special education and related services to all children with disabilities within such State.

5

20 U.S.C. §§ 1412(a)(10)(A)(i), 1412(a)(10)(B)(i).

Under these provisions, Congress intended private schools in which disabled students are placed to receive federal funds. See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985) ("[T]he Act . . . provides for placement in private schools at public expense . . . ."). Congress expressly provided for the allocation and disbursement of federal funds through state agencies for the purpose of providing an appropriate education for disabled children placed in private schools. 20 U.S.C. §§ 1412(a)(10)(B)(i).

Further, when Congress drafted the IDEA, it did so with the understanding that the grants it provided would bind recipients to the obligations of Title IX. Title IX and the Rehabilitation Act, among other federal laws, are modeled after Title VI, a statutory framework that envisioned a broad range of grant programs triggering coverage. See Grove City Coll., 465 U.S. at 566 & n.15 (citing 29 Fed. Reg. 16298, 16303-05, codified as 45 C.F.R. pt. 80, app. A (1972)); M.H.D. v. Westminster Schs., 172 F.3d 797, 802 n.12 (11th Cir. 1999); 45 C.F.R. pt. 80, app. A (listing various educational grant programs to which Title VI applies, including several designed to benefit disabled children). When Congress drafts a statute providing federal funds to private entities it does so with the knowledge that, should those entities choose to accept those funds, they will be assenting to the regulatory power of Title VI and its progeny. See Paralyzed Veterans, 477 U.S. at 606.

The grants provided to the School under the IDEA are analogous to the Basic Educational Opportunity Grants at issue in Grove City College. There, the Court reasoned that earmarking funds for specific purposes is an important clue that Congress intended an educational program to receive federal funds. 465 U.S. at 571-73. Similarly here, the IDEA earmarked funds for private schools by requiring local education agencies to identify, locate, and evaluate disabled

6

children who are enrolled in private schools by their parents with the consent of their local public agency, and to develop and implement a practical method for determining which of those children are receiving needed special education services. 20 U.S.C. §§ 1412(a)(3)(A), 1412(a)(10)(i)-(iii). Based on this "child find," federal funds will be granted to the public agency proportionally; these funds may not be supplanted by state or local funds. Id. §§ 1412(a)(10)(A)(i)(I), 1412(a)(10)(A)(i)(IV). For children like J.D.—who are placed in a private school by local or state education agencies—the payments the public agency is required to make to the placement school are directly determined by the funding the state receives from the federal government under the IDEA. Id. § 1412(f)(2)(A). Funds that cannot be used for any purpose other than payments to private schools that provide special education services to children in compliance with the IDEA can only be described as "earmarked" for that purpose. Compare with Smith I, 525 U.S. at 468, for an explanation that, although the NCAA received dues from colleges and universities that received federal funds, it merely benefited from federal funds because they were not "earmarked" for payment of dues to the NCAA. Accordingly, the court finds that Congress intended the School to receive federal funds.

Next, the court must determine whether the School is "in a position to accept or reject [the obligations set forth by federal law] as part of the decision whether or not to 'receive' federal funds." Paralyzed Veterans, 477 U.S. at 606. The language of the IDEA does not obligate private schools to take children who are referred or placed by public agencies. The School's ability to choose whether or not to enroll J.D. and to accept the tuition payments provided by the state or local education agency indicates its ability to reject federal funds if it so chooses. See Grove City Coll., 465 U.S. at 565, n. 13. The School thus has the power to accept or reject those funds.

The School argues that because it is not obligated to ensure a disabled student receives a free appropriate public education under 603 C.M.R. 28.06 (implementing the mandates of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-50), it merely benefits from the federal funds received by the district, and cannot be held liable under Title IX. Def. The League Sch. of Greater Bos., Inc.'s Mem. Supp. Its Mot. Dismiss Count I of Pls.' Compl. 7 [#25]. The School points to both the language of the IDEA and case law in other Circuits to support its argument. See 20 U.S.C. § 1412(a) ("A State is eligible for assistance . . . if the State submits a plan that provides assurances . . . that the State has in effect policies and procedures to ensure that the State meets [the conditions of the IDEA]"); Ullmo v. Gilmour Acad., 273 F.3d 671, 678-79 (6th Cir. 2001) (holding that private schools are not subject to liability under the IDEA); St. Johnsbury Acad. v. D.H., 240 F.3d 163, 171 (2d Cir. 2001) (holding that the "IDEA applies only to the State and other public agencies, not to private schools in which public agencies may place children"); J. v. Sch. Dist. of Phila., No. 06-3866, 2007 WL 1221216, at *5 (E.D. Pa. Apr. 25, 2007) (dismissing claims under the IDEA and Section 504 of the Rehabilitation Act against a private contractor that provided special education services to students in Philadelphia public schools).

The School's argument is misplaced. The courts in Ullmo and St. Johnsbury Academy were tasked with a different question than the one presented here—whether private entities can be held liable under the IDEA for failing to ensure that disabled students received a free appropriate public education. The courts found that liability under the IDEA was precluded because the statutory language indicated that the state and local educational agencies, not the private schools in which students were placed, retained responsibility for the students' education. See Ullmo, 273 F.3d at 678-79; St. Johnsbury Acad., 240 F.3d at 171.

Ullmo and St. Johnsbury Academy did not address liability under Title IX and did not reach the question of whether the private entities received federal funding. As described above, Title IX has a far broader reach, applying to "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Given the wide availability of federal funds for educational opportunities—public or private—this necessarily includes some private educational activities. See, e.g., Grove City Coll., 465 U.S. at 569-70, 574 (holding that a private college received federal funds and was subject to Title IX); see also United States v. Hersom, 588 F.3d 60, 65 (1st Cir. 2009) ("We view [Grove City College, Paralyzed Veterans, and Smith I] as establishing that the term 'Federal financial assistance' generally refers to entities receiving federal funds . . . indirectly[,] so long as they are the intended recipients of the federal legislation providing the assistance."). Thus, regardless of whether the School may not be held liable for failing to provide an appropriate education under the IDEA, the federal funds granted by the IDEA can still trigger Title IX obligations.

Nor does the reasoning of J. v. Sch. Dist. of Phila., 2007 WL 1221216, assist the School here. There, the student was not placed in a private school, and instead, a private contractor provided services in the public school. Id. at *1. And although that court found that the complaint there failed to adequately allege that the private contractor was a recipient of federal funds, the court so found because the private contractor did not control decisions with respect to the federal funds received by the public school. Id. at *2, 5. In contrast here, as set forth above, the funding for placements under the IDEA, like the tuition assistance in Grove City College, can be refused altogether by the School.

Accordingly, plaintiff has adequately alleged that the School is a recipient of federal funds for the purposes of Title IX liability.

9

IV. <u>Conclusion</u>

For the foregoing reasons, Doe has successfully stated a claim under Title IX and the School's <u>Motion to Dismiss</u> [#24] is DENIED.

IT IS SO ORDERED.

Date: August 21, 2017          /s/ Indira Talwani
                               United States District Judge