UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANE DOE, individually and as Mother and Next Friend of J.D., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>THE LEAGUE SCHOOL OF GREATER BOSTON, INC., FRANK GAGLIARDI, PATRICK FULLER, SEAN BERTONI, and DONNA GRIFFIN,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 16-cv-11940-IT |

MEMORANDUM & ORDER

May 3, 2018

TALWANI, D.J.

Jane Doe brings this action individually and on behalf of her child, J.D., asserting that J.D. was molested by A.B. when J.D. and A.B. were residential students at The League School of Greater Boston, Inc. ("League School"). This order addresses League School's Motion for Partial Summary Judgment [#102] on Count I of Doe's Complaint [#1], alleging violations of Title IX of the Education Amendments Act, 20 U.S.C. § 1681(a), and League School's Motion to Strike Inadmissible Statement from Summary Judgment Record [#123]. For the following reasons, the Motion to Strike is ALLOWED in part and DENIED in part, and the Motion for Partial Summary Judgment is DENIED.

I. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury

could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted). In resolving a motion for summary judgment, the court views all properly supported evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

II.     Evidence as to Count I Viewed in the Light Most Favorable to Doe

This section recounts the evidence relevant to Count I that is either undisputed for summary judgment purposes, not properly disputed pursuant to Federal Rule of Civil Procedure 56(c) and (e), or viewed in the light most favorable to Doe, as the non-moving party.

League School is a private day and residential school for students with autism. Def.'s Statement of Material Facts [hereinafter "Def.'s SOF"] ¶ 2 [#104]. It runs multiple residential facilities for its students. Id. ¶¶ 6, 8. One League School residential facility is the Rock Street Home, which is licensed by the Massachusetts Department of Elementary and Secondary Education ("DESE") to house students from seven to twenty-two years old. Id. ¶ 7.

A.B. was almost sixteen years old in July 2013 when he began attending League School and residing at League School's Rock Street Home. Def.'s SOF ¶ 10; Pl.'s Statement of Additional Material Facts [hereinafter "Pl.'s SOF"] ¶ 27 [#110]. A.B.'s diagnoses include expressive language disorder, reading disorder, written expression disorder, pervasive developmental disorder not otherwise specified, mood disorder, attention deficit hyperactivity disorder, and a seizure disorder. Def.'s SOF ¶ 12. A.B. has significant cognitive limitations that cause him to struggle academically, socially, and behaviorally. Id. ¶ 13.

On December 2, 2013, A.B.'s roommate told League School staff that A.B. had tried to

"hump" him the night before in their shared room at the Rock Street Home. Id. ¶ 14; see also Pl.'s SOF Ex. 1 [hereinafter "Fuller Dep."] 120:18-121:1 [#110-1]. The roommate asked for a new roommate. Def.'s SOF ¶ 14. According to Patrick Fuller, then League School's assistant principal, when he learned of this incident, he considered it a serious incident of potential sexual harassment or assault. Pl.'s SOF ¶ 29; see also Fuller Dep. 120:18-121:1 [#110-1]. Staff were immediately placed outside the boys' room all night, with both boys in staff's sight. Pl.'s SOF Ex. 10 ["Internal Investigation Report"] 6-7 [#110-10]. Interviews of staff commenced the next day, and League School immediately terminated one counselor's employment. Id.

Pursuant to Massachusetts law and school policies, League School was obligated to report all incidents of suspected child abuse or neglect, and all serious incidents affecting a student's well-being, to the student's school district and to DESE. Pl.'s SOF ¶¶ 22-23. League School did not report the incident, Def.'s SOF ¶ 17; Pl.'s SOF ¶ 30, but an unidentified party reported the incident to the Massachusetts Department of Children and Families ("DCF"). Pl.'s SOF ¶ 31. On December 11, 2013, DCF notified League School of a report indicating that "a student at League School attempted to have anal sex with another student," "[s]taff members were non-responsive," and "[s]taff members were reported to have left the premises and/or sleeping." Internal Investigation Report 1 [#110-10]. DCF also notified the Massachusetts Department of Early Education and Care ("EEC") of this report.[1]

---

[1] Doe contends that "[t]he DCF report contained a description of the incident alleging that A.B. had 'attempted to have anal sex with another student.'" Pl.'s SOF ¶ 32. League School moves to strike this statement from the DCF report, from other exhibits containing the language, and from Plaintiff's Statement of Additional Material Fact No. 32. See Motion to Strike [#123]. Pursuant to Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." According to League School, this statement is both irrelevant and inadmissible hearsay.

The court agrees that if offered for the truth of the matter, the statement is inadmissible hearsay. Accordingly, Plaintiff's Statement of Additional Material Fact No. 32 is stricken.

3

On the day of the DCF report to the League School, A.B. was moved to a single room. Def.'s SOF ¶ 37. Both Fuller and EEC proceeded to investigate the incident further. Pl.'s SOF ¶ 33; Def.'s SOF ¶¶ 15, 19. According to Fuller's report of his investigation:

> Interviews with students reveal that the students were fully clothed, but engaged in sexualized touching. Students claimed touching included pressing on the stomach and hugging. One student indicated that the other student lay on his stomach and indicated that the other student 'humped my stomach'. Both students offer almost identical stories, but each student alleges that the other student was the instigator.

Internal Investigation Report 1 [#110-10]. This report also indicates that, although neither A.B. nor his roommate had a prior history of sexual behavior recorded in their student files, "A.B. was involved in another incident with his old roommate, but no touching was involved." Id.

Fuller's report states that video surveillance revealed that one residential counselor left the Rock Street Home the night of the incident and failed to return for over an hour. Id. That counselor then slept upon returning. Id. Further, Fuller's report found that two staff members failed to complete required bed checks during their shift. Id. League School discharged the residential counselors involved. Id. The Internal Investigation Report initially recommended the following additional changes: (1) stationing of overnight residential staff outside A.B.'s and his roommate's room, (2) residential doors would remain open, (3) additional bed checks, (4) overnight spot checks and documentation of spot checks, and (5) the assistant principal and residential coordinator would observe the residence via camera at least once a week and

---

If offered to show what triggered League School and EEC's further investigation in December 2014, however, the statement is neither hearsay nor irrelevant. The court notes that the statement appears in League School's own report of the investigation, a document offered not only by Plaintiff, see Pl.'s SOF Exhibit 10 [#110-10], but also by League School. See Def.'s SOF Ex. B [#104-2]. Accordingly, the statement is not stricken from the underlying documents, and is considered on summary judgment for this limited purpose of showing what triggered the further investigations.

4

document these observations in a residential video log. See Internal Investigation Report 7 [#110-10]. League School also mandated that the students "are to be line of sight [sic] and this requirement will be reviewed with staff at the beginning of each shift." Id.

According to the EEC report, which EEC provided to League School, A.B.'s roommate informed EEC that he had "screamed for help" during the incident, but no staff responded. Pl.'s SOF Ex. 11 ["EEC Report of December 2013 Incident"] [#110-11]. EEC found League School staff failed to supervise students and left students unmonitored for extended periods of time. Pl.'s SOF ¶ 41. This "provided opportunity for inappropriate interactions between residents." Id. The EEC report noted that both A.B. and the roommate "denied any touching of private parts" but both confirmed that their stomachs were touched. Id.

In response to EEC's findings, Fuller prepared a corrective action plan that reiterated an earlier plan providing that the school would complete semi-annual evaluations of residential staff and require all residential staff to complete their twenty-four hours of annual training. Pl.'s SOF ¶¶ 13-14, 42. League School also officially maintained the "line of sight" policy for A.B. throughout the time period relevant to this action.

J.D., a student with autism spectrum disorder, mood disorder, and post-traumatic stress disorder, began attending League School as a non-residential day student in early 2014. He became a residential student at the Rock Street Home in July 2014. Def.'s SOF ¶¶ 1, 3; Pl.'s SOF ¶ 51. J.D. is six years younger than A.B.

In December 2014, when J.D. was eleven and A.B. was seventeen, A.B. used his portable videogame device (his "PSP") to show J.D. a pornographic video of a man and a woman engaging in anal sex. Id. ¶¶ 54-55, 64. J.D. told League School staff that A.B. had shown J.D. pornography on A.B.'s PSP. Pl.'s SOF Ex. 13 [hereinafter "J.D. Dep."] 25:1-24, 26:10-19 [#110-

5

13]. League School subsequently took away A.B.'s PSP. Id. at 27:11.[2]

On December 18, 2014, J.D. told a League School teacher that he watched pornography when he went home for the weekend. Def.'s SOF ¶ 44. A League School social worker notified Doe of what J.D. had said. Id. ¶ 45. Doe spoke with J.D. and then told League School that she had confirmed that J.D. had been watching pornography on her home iPad. Id. ¶ 46. Doe also informed League School that J.D. said A.B. "has discussed sex with [J.D.] and told him what to look up online." Id. ¶ 47. Doe asked to be notified if J.D. was exposed to similar behavior in the future. Id. ¶ 49.

On June 12, 2015, J.D. reported to League School staff that A.B. had touched him sexually and he wanted this to stop. Id. ¶ 55. League School staff interviewed J.D., who reported that A.B. had pulled J.D.'s pants down and touched him at least three times. Pl.'s SOF ¶ 61. That day, League School notified Doe of what it had learned. Def.'s SOF ¶ 56. League School also reported A.B.'s inappropriate sexual touching to DCF. Id. ¶ 58. League School then investigated what J.D. had said and prepared a report of its investigation. Id. ¶ 59. This investigation involved interviews with both J.D. and A.B. Id. ¶ 63. During these interviews, J.D. said that A.B. had exposed himself to J.D. in the bathroom one time, and that A.B. had pulled down J.D.'s pants in the basement of the Rock Street Home and touched him on three occasions. Id. ¶ 64. In his interview, A.B. discussed an incident in which he and J.D. were playing video games when J.D. pulled down his pants, exposing himself to A.B., and an incident in which A.B. had touched

---

[2] League School does not dispute that it took away A.B.'s PSP because A.B. was watching pornography on the device, but disputes that J.D. told League School that A.B. used his PSP to show pornography to J.D. or that J.D.'s report was the reason the school took away A.B.'s PSP. Pl.'s SOF ¶ 58. The dispute as to whether J.D. made this report cannot be resolved on summary judgment. For purposes of summary judgment, J.D.'s version is necessarily accepted as true. J.D.'s belief that his report was the reason that A.B.'s PSP was taken away is offered without any evidentiary support, and accordingly, that belief is not considered here.

J.D.'s genitals on one occasion when A.B. found J.D. masturbating in a stairwell. Id. ¶¶ 65-66.

Based on the information provided, League School reviewed video camera footage from the Rock Street Home, which revealed that the following series of events occurred on June 4, 2015. Four students were in the basement. A staff member took one student upstairs, leaving the others alone. Pl.'s SOF ¶ 72; Def.'s SOF ¶¶ 69-71. A.B. exposed himself to J.D. and made masturbatory movements. Id. ¶ 71. This video did not reveal any touching between the two students. Id. ¶ 72. No similar incidents were found on League School's video, id. ¶ 73, but League School has conceded that video tapes are taped over every two weeks. Although League School's policies provided that A.B. should have been supervised by a staff member under the "line of sight" policy, none of the incidents J.D. reported were observed by staff. Pl.'s SOF ¶¶ 65-67. No staff members appear to have been present during the events captured on the June 4 video. Id. ¶ 67. League School subsequently disciplined the employees who were responsible for leaving A.B. and J.D. unsupervised in the basement. Def.'s SOF ¶ 78.

Following a weekend at home, J.D. returned to League School and the Rock Street Home on Sunday, June 14. Id. ¶¶ 74-75. The next day, League School removed A.B. from the Rock Street Home and placed him in a separate residence. Id. ¶ 76. The record includes no further interactions between the boys after June 14.

Doe and League School later learned of additional incidents that had occurred prior to June 14. In a September risk assessment with psychiatrist Dr. Andrew Clark, A.B. admitted he engaged in more extensive sexual contact with J.D. than previously reported. Pl.'s SOF ¶ 76. According to Dr. Clark's report, A.B. said he and J.D. "hooked up in the stairwell less than twenty times over a long period of time." Id. Dr. Clark reported that A.B. described these interactions as brief so as to avoid being caught. Def.'s SOF ¶ 82. Doe learned of A.B.'s report to

7

Dr. Clark of more extensive sexual molestation of J.D later that month and immediately withdrew J.D. from the School. Id. ¶ 92.

Doe filed this lawsuit in September 2016. Discovery has revealed that A.B.'s molestation and harassment of J.D. prior to June 14 were even more extensive than A.B. had reported to Dr. Clark. For example, J.D. has acknowledged that there were two to three incidents in which A.B. placed his penis in J.D.'s buttocks, as well as other incidents in which A.B. exposed himself, performed oral sex on J.D., and had J.D. touch A.B.'s penis. Pl.'s SOF ¶ 62.

### III. Motion for Summary Judgment on Count I

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[R]ecipients of federal funding may be liable for 'subject[ing] their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 646-47 (1999). As this court previously summarized, see Order [#68], to state a Title IX claim based on student-on-student sexual harassment, Doe must prove: (1) that J.D. was "subject to severe, pervasive, and objectively offensive sexual harassment by a school peer"; (2) that the harassment caused J.D. "to be deprived of educational opportunities or benefits"; (3) that League School receives federal funds; (4) that League School had actual knowledge of sexual harassment; (5) that the harassment occurred in one of the school's programs or activities; and (6) that League School "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007) (internal quotation marks omitted).

League School's Motion for Summary Judgment on Count I is focused on the fourth and sixth prong, arguing that League School did not know of severe, pervasive, and objectively offensive sexual harassment against J.D. until J.D.'s June 12, 2015, report of sexual contact, and that League School was not deliberately indifferent to the harassment against J.D. of which it was aware. See Def.'s Mem. in Support of Mot. for Partial Summ. J. 12 [#103]. In response, Doe does not take issue with League School's response after June 12, 2015, but with its earlier inaction. Doe relies on both the December 2013 report of the incident involving A.B. and his roommate, and on the League School learning in December 2014 that A.B. had shown J.D. pornographic content on A.B.'s PSP device. See Pl.'s SOF ¶¶ 53-56; J.D. Dep. 25:1-24, 26:10-19 [#110-13].

To resolve this dispute, the court must first determine what information would trigger an obligation to respond. League School contends that it needed to have actual knowledge of harassment that is "severe, pervasive, and objectively offensive." At least one out-of-circuit decision supports this conclusion. See Hill v. Cundiff, 797 F.3d 948, 969 (11th Cir. 2015) ("We hold a Title IX plaintiff must prove the funding recipient had actual knowledge that the student-on-student sexual harassment was severe pervasive, and objectively offensive."). In reaching this conclusion, the Eleventh Circuit relied on the statement in Davis that schools are only liable for damages under Title IX "where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 650.

The court disagrees that Davis requires knowledge of severe, pervasive, and objectively offensive harassment before a school must respond. Davis, by its express terms, speaks to two

9

distinct requirements – the school must have actual knowledge of sexual harassment to trigger a duty to respond, and the harassment underlying the Title IX claim must be severe, pervasive, and objectively offensive to allow for damages. Harm and notice are separate requirements of a Title IX claim.

The requirement that a Title IX plaintiff show severe, pervasive, and objectively offensive harassment speaks to the level of harm a plaintiff must show to be entitled to damages. To constitute "discrimination" under Title IX, sexual harassment must cause a student to be "'excluded from participation in' or 'denied the benefits of' any 'education program or activity receiving Federal financial assistance.'" Davis, 526 U.S. at 650 (quoting 20 U.S.C. § 1651(a)). This is why, "in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Id. at 652.

By contrast, the notice requirement of Title IX claims addresses when the school's duty to respond is triggered. Throughout Davis, the court frames the notice requirement in the form of *knowledge of sexual harassment*, not knowledge of severe, pervasive, and objectively offensive harassment. See Davis, 526 U.S. at 633 ("deliberate indifference to known acts of harassment"); id. at 647 ("where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment"); id. at 648 ("recipients may be liable for their deliberate indifference to known acts of peer sexual harassment"); id. at 649 ("the recipient must . . . respond to known peer harassment in a manner that is not clearly unreasonable"); id. at 653 ("official indifference to known peer sexual harassment"). Davis underscores a school's duty to respond to known student-on-student sexual harassment. Id. at 644. Nothing in Davis entitles a school to ignore reports of sexual harassment until the sexual harassment is so severe that a student is excluded

from participation or denied benefits of education programs or activities.

When League School learned of the incident between A.B. and his roommate in December 2013, it launched an investigation that showed A.B. had engaged in inappropriate sexualized touching with his roommate (regardless of who had initiated the touching), and that League School staff were not in close enough proximity to hear the roommate's screams for help. Although this incident did not involve J.D., the Title IX "notice standard does not require that the [alleged harasser] actually commit previous acts of harassment against the plaintiff-student and that the plaintiff-student complain before the institution may be held liable for the [alleged harasser's] subsequent repeated misconduct under Title IX." Bloomer v. Becker Coll., 09-cv-11342-FDS, 2010 WL 3221969, at *4-5 (D. Mass. Aug. 13, 2010) (addressing teacher-on-student harassment). Complaints by other students about the same harasser can provide sufficient notice to require a school to respond. Id.; see also Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 208 (D.N.H. 2009) ("'[A]ctual knowledge of discrimination' can take the form of knowledge about the alleged harasser's conduct toward others which indicates some degree of risk that the harasser would subject the plaintiff to similar treatment.").

Then, according to Doe's evidence, League School learned in December 2014 that A.B. had shown J.D. pornography. A seventeen-year-old showing pornography to an eleven-year-old is a serious incident. To be sure, Davis cautions that "children may regularly interact in a manner that would be unacceptable among adults," 526 U.S. at 651. Yet difference in age between the alleged harasser and victim is an important factor under Davis. Id. Disparities in development, power dynamics, and sexual understanding between a seventeen year old and an eleven year old meant this was not an interaction between peers. While A.B. had undergone puberty, J.D. had not. Taken together, the 2013 and 2014 incidents could support a jury finding that, at least by

December 2014, League School had acquired actual knowledge of A.B.'s student-on-student sexual harassment triggering its duty to respond.

That Doe can proffer evidence from which a jury could conclude League School had knowledge of student-on-student sexual harassment as of December 2014 does not end the inquiry. League School can only be liable "for [its] deliberate indifference to known acts of peer sexual harassment." Davis, 526 U.S. at 648. That is, League School can only be liable for harassment if "its response (or lack thereof) [was] clearly unreasonable in light of the known circumstances." Porto, 488 F.3d at 73. It is not enough to show that League School could have done more to prevent harassment. Id. Nor is it enough "that measures designed to stop harassment prove later to be ineffective." Id. at 74.

League School argues in its reply that even considering the earlier incidents, its response was not clearly unreasonable. Much of this case, however, will turn on A.B. and J.D.'s credibility. Viewing the evidence in the light most favorable to Doe, as the non-moving party, a jury could reasonably find that, despite learning in December 2014 that one of its students with a history of inappropriate sexual behavior toward his peers had shown pornography to a significantly younger student, League School did not separate A.B. from J.D. until June 2015. According to J.D., and according to what A.B. told Dr. Clark, A.B. committed numerous acts of severe sexual harassment, including rape, against J.D. while both students were at League School. Viewing this evidence in Doe's favor, League School failed to implement its line-of-sight policy and its video recording review policy on at least as many occasions as J.D. was harassed. These failures gave A.B. multiple opportunities to sexually molest J.D. in the stairwell and basement of the Rock Street Home.

Accordingly, Doe has shown that genuine issues of material fact exist as to when League

School knew of student-on-student harassment so as to trigger its duty to respond as well as to whether League School's response to A.B.'s known conduct was clearly unreasonable.

IV. Conclusion

For the foregoing reasons, League School's Motion for Partial Summary Judgment [#102] is DENIED and League School's Motion to Strike Inadmissible Statement from Summary Judgment Record [#123] is ALLOWED in part and DENIED in part.

IT IS SO ORDERED.

Date: May 3, 2018 /s/ Indira Talwani
United States District Judge