UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANE DOE, individually and as Mother and Next Friend of J.D., a Minor, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-11940-IT |
| THE LEAGUE SCHOOL OF GREATER BOSTON, INC., FRANK GAGLIARDI, PATRICK FULLER, SEAN BERTONI, and DONNA GRIFFIN, | * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

May 3, 2018

TALWANI, D.J.

Plaintiff Jane Doe brings this action individually and on behalf of her disabled child, J.D., against Defendants The League School of Greater Boston, Inc. ("League School"), Frank Gagliardi, Patrick Fuller, Sean Bertoni, and Donna Griffin. Defendants' pending Motion for Partial Summary Judgment [#97] seeks judgment as to Count VII of the Complaint [#1], a claim for intentional infliction of emotional distress under Massachusetts law. For the reasons that follow, Defendants' motion is ALLOWED.

I.  Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United

Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted). In resolving a motion for summary judgment, the court views all properly supported evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

II. Evidence as to Count VII Viewed in the Light Most Favorable to Doe

As set forth in greater detail in the court's order addressing League School's Motion for Partial Summary Judgment [#102] on Count I of the Complaint, J.D. and A.B. were both residential students at League School. Defs.' Statement of Material Facts [hereinafter "Defs.' SOF"] ¶ 1 [#99]. League School's assistant principal, Patrick Fuller, learned in June 2015 that A.B., then seventeen years old, had engaged in inappropriate sexual touching with J.D., who was eleven years old at the time. Pl.'s Statement of Add'l Mat'l Facts [hereinafter "Pl.'s SOF"] ¶¶ 4-6 [#113]. Fuller understood at the time that A.B.'s behavior included A.B. pulling J.D.'s pants down and touching him at least three times. Pl.'s SOF ¶ 6. League School disclosed A.B.'s sexual molestation of J.D. to Doe on June 12, 2015. Defs.' SOF ¶ 6.

Viewing the evidence in the light most favorable to Doe, as the non-movant, the relevant further factual background is as follows. A.B. underwent a psychiatric examination with Dr. Andrew Clark in September 2015. Defs.' SOF ¶ 7. During the evaluation, A.B. revealed that he had engaged in additional, previously undisclosed, sexual acts with J.D. Id. ¶ 8. School staff learned of this more extensive misconduct on September 24, 2015. Pl.'s SOF ¶ 9. That day, staff contacted Doe to inform her that J.D. had suffered more extensive molestation than initially thought. Id. ¶ 10. Staff also told Doe that League School had reported the molestation to the Department of Children and Families. Defs.' SOF Ex. B ["Pl.'s Suppl. Answers to Interrogatories"] ¶ 3 [#99-2].

Upon receiving League School's call, Doe immediately traveled to League School, where she met with Fuller and Donna Griffin, another administrator. Id. Although Doe requested full information about the extent of the molestation, League School staff refused to tell her details about A.B.'s molestation of J.D., citing A.B.'s health information privacy rights. Pl.'s SOF ¶ 12. Despite Doe's repeated requests for more information, League School staff only informed Doe that "more happened" than initially thought, but "there was no anal penetration." Id. ¶¶ 13, 16. Doe describes staff members' responses to her inquires as "callous." Defs.' SOF Ex. C ["Pl.'s Answers to League School's Interrogatories"] ¶ 13 [#99-3]. After the meeting, Doe removed J.D. from League School. Defs.' SOF Ex. D ["Jane Doe Dep."] 178:24 [#99-4].

J.D. suffers from Autism Spectrum Disorder, Mood Disorder, and Post-Traumatic Stress Disorder, and was unable to inform Doe of the molestation he experienced. Pl.'s SOF ¶ 18. League School never informed Doe of the details of the more extensive molestation revealed during Dr. Clark's examination of A.B. Id. ¶ 14.

In October 2015, Doe learned of the additional incidents from the Massachusetts Department of Children and Families ("DCF"). Id. ¶ 15. These additional incidents included A.B.'s claims of oral sex, sexual touching, and other sexual acts occurring at League School's residences "less than 20 times over a long period of time." Defs.' SOF ¶ 8; Pl.'s SOF ¶ 8.

Doe asserts that Defendants' refusal to inform her of the full details of the molestation disclosed by Dr. Clark caused her severe emotional distress. Id. ¶ 16. She has stated that "[k]nowing the details as to how my son was molested in a League School residence, with no one to help him, creates an indelible picture in my mind and gives me nightmares that never seem to end." Pl.'s Answers to League School's Interrogatories ¶ 10 [#99-3]. She says she suffers "emotional distress from the realization that my son is scarred from abuse that never

should have happened to an 11-year old boy in a school where he was supposed to be closely supervised." Id. Doe says she "will never recover from the impact of sitting in a room with League School staff and being told that 'more sexual molestation happened than was thought,' only to have the staff members refuse to tell me what had happened, citing the perpetrator's privacy rights." Id. She says she "spent weeks suffering emotionally from not knowing what had occurred, only to have that distress later increase when [she] finally learned through DCF about the full scope and frequency of molestation that had happened to [her] son." Id.

III. Discussion

An intentional infliction of emotional distress claim requires a plaintiff to prove that "(1) the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's distress; and (4) the plaintiff suffered severe distress." Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994). Based on her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [#111], Doe hinges her claim for intentional infliction of emotional distress on League School's refusal to tell her further details it had learned about A.B.'s molestation of J.D. from Dr. Clark's report, which Doe claims caused her to speculate for weeks about the potential molestation J.D. had endured.

Defendants argue that the evidence does not show any "extreme and outrageous" conduct by Defendants. To constitute extreme and outrageous conduct, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987) (internal quotations and citations omitted). Doe responds that League School staff members were "callous" in refusing to provide further details about A.B.'s

4

conduct toward J.D. in response and that state regulations required Defendants to disclose the details about the molestation. See Pl.'s Opp'n to Mot. Partial Summ. J. 7-8 [#111].

Even assuming Doe is correct that Defendants were "callous" and that they *did* violate a state regulation, such conduct does not alone meet the standard for extreme and outrageous conduct. Indeed, it is not even enough to show "that the defendant has acted with an intent which is tortious or even criminal." Foley, 508 N.E. 2d at 82 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Instead, the material question is whether conduct was sufficiently extreme and outrageous so as to support an intentional infliction of emotional distress claim.

Doe does not provide evidence from which a jury could conclude that the conduct was extreme and outrageous. There is no dispute that the substance of what the League School staff did tell Doe – that the extent of the molestation J.D. had suffered was greater than initially thought – caused Doe extreme emotional distress. But Doe's claim is focused on staff's action in withholding additional information. Had staff members provided the full details of the known molestation, it is difficult to understand how Doe's emotional distress would have been any less. Even according to Doe, her emotional distress only increased when she learned these details.

The record also includes no evidence to support a claim that the additional information was withheld with the intent to cause her emotional distress.

In sum, Doe's claim that staffs' failure to tell her the additional details of the sexual abuse cannot meet the "very high" standard for a claim of intentional infliction of emotional distress. Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

IV. Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [#97] as to

Count VII of the Complaint is ALLOWED.

    IT IS SO ORDERED.

May  3, 2018                                                    /s/ Indira Talwani
                                                                        United States District Judge